NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

ABELINA L., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, R.M., *Appellees.*

No. 1 CA-JV 21-0049
FILED 9-9-2021

Appeal from the Superior Court in Maricopa County
No. JD37086
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge David B. Gass and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

¶1        Abelina L. ("Mother") appeals the juvenile court's order terminating her parental rights to her child ("R.M."). For reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        R.M. was born in 2019. Shortly thereafter, the Arizona Department of Child Safety ("DCS") received a report that Mother was unable to care for R.M. because of Mother's unaddressed mental health and cognitive disabilities, including her inability to demonstrate appropriate parenting skills or adequately care for R.M.

¶3        DCS investigated the allegations, removed R.M. from Mother's care, and placed the child with a temporary foster family until a stable kinship placement was found. DCS filed a dependency petition alleging Mother neglected R.M. due to Mother's mental illness and/or mental deficiency, as well as Mother's inability and failure to provide for the child's basic needs. Following a contested hearing, the court adjudicated R.M. dependent as to Mother.[1]

¶4        The court set a case plan of family reunification, and DCS referred Mother to a variety of services, including supervised visitation, parent-aide services, self-referred parenting classes, psychological consultation, and mental-health services. Initially, Mother engaged in the parent-aide skill sessions, but within a few months, these services closed out after Mother was incarcerated for prostitution.

¶5        In August 2019, after Mother was released from custody, DCS re-referred her for parent-aide services. Mother inconsistently attended skill sessions and supervised visitation. When Mother attended supervised visits, she needed constant direction regarding R.M.'s immediate needs and

---

[1] The dependency petition was later amended to include R.M.'s biological Father. Father is not a party to this appeal.

care. In January 2020, Mother unsuccessfully closed out of parent-aide services for the second time due to lack of engagement.

¶6            Throughout the dependency, Mother struggled with self-harming behavior, suicidal ideations, and was hospitalized after one suicide attempt. Mother was also inconsistent with counseling, behavioral health appointments, and taking her prescribed mental-health medication.

¶7            The DCS case manager referred Mother for a psychological evaluation to "determine diagnostic clarification and to provide treatment recommendations related to her parenting abilities." Dr. Mirkin conducted the evaluation and recommended Mother participate in a psychiatric evaluation, individual counseling (preferably using a Dialectical Behavior Therapy ("DBT") approach), adaptive behavioral skills course, supervised visitation, and parent-aide services. Dr. Mirkin also submitted an addendum report and testified how Mother's lack of participation in services would worsen her already "very poor" prognosis. Dr. Mirkin explained the importance of Mother participating in counseling and taking her medication in order to benefit from other services provided but did not specify DBT as the recommended approach in the addendum.

¶8            Still, Mother refused to take prescribed medication and participate in services offered, including vocational rehabilitation, adaptive-skills training, and counseling. Although Mother was amenable to the DBT counseling approach, the case manager was unable to reach her after numerous attempts to make a referral.

¶9            In late July 2020, upon DCS's request, the juvenile court changed the case plan from family reunification to severance and adoption. DCS moved to terminate Mother's parental rights. Following a severance trial in January 2021, the juvenile court terminated Mother's parental rights based on her mental illness or deficiency, under A.R.S. § 8-533(B)(3), and fifteen months in an out-of-home placement, under A.R.S. § 8-533(B)(8)(c). The juvenile court found DCS made reasonable and diligent efforts to reunify Mother and her child. *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 33 (App. 1999); A.R.S. § 8-533(B)(8)(c).

¶10            Mother timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶11**　　　We review a severance ruling for an abuse of discretion, accepting the court's factual findings unless clearly erroneous, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and view the evidence in the light most favorable to sustaining the court's ruling, *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).

**¶12**　　　"To justify termination of the parent-child relationship, the [juvenile] court must find, by clear and convincing evidence, at least one of the statutory grounds set out in [A.R.S. §] 8-533," *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000), and find, by a preponderance of the evidence, that termination is in the best interests of the child, *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

**¶13**　　　Mother only challenges whether DCS made diligent efforts at reunification and does not challenge the juvenile court's statutory findings, or that termination of the parent-child relationship was in R.M.'s best interests. *See* ARCAP 13(a) (requiring appellant's brief contain a statement of issues for review, supporting legal authority, references to the record, and reasons for each contention); *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 6 (App. 2017) ("[W]e adhere to the policy that it is generally not our role to *sua sponte* address issues not raised by the appellant."); *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (recognizing the failure to develop an argument on appeal usually results in abandonment and waiver of the issue).

**¶14**　　　DCS must prove it made diligent efforts to provide appropriate reunification services leading up to the termination of parental rights. *Mary Ellen C.*, 193 Ariz. at 192, ¶ 33 ("Arizona courts have long required the State, in mental-illness-based severances . . . to demonstrate that it has made a reasonable effort to preserve the family."); A.R.S. § 8-533(B)(8) (as a prerequisite to termination under the out-of-home placement ground, DCS must make "a diligent effort to provide appropriate reunification services"). Mother's sole contention on appeal is that DCS did not fulfill its obligation to provide her with those services.

¶15 More specifically, Mother claims DCS's efforts were insufficient because, although DCS offered counseling, DCS did not entirely follow the counseling approach recommended in Dr. Mirkin's initial report. We are not persuaded. DCS provided Mother with a variety of services, including supervised visitation, parent-aide services, self-referred parenting classes, psychological consultation, and mental-health services, which entailed, vocational rehabilitation, adaptive-skills training, and counseling. Though Mother did not participate in the DBT counseling approach recommended by Dr. Mirkin, the record shows Mother did not respond when DCS attempted to provide the same. Further, although Dr. Mirkin's initial report recommended DBT, the addendum report did not mention it.

¶16 DCS is only required to provide Mother with "the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). Regardless of the type of service Mother believed she was entitled to, DCS is not required to provide every conceivable service or ensure Mother participates in each service it offers. *Id.* Furthermore, if Mother believed DCS was not making diligent or reasonable reunification efforts, "it was incumbent on her to promptly bring those concerns to the attention of the juvenile court." *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2014). And "in the absence of an objection challenging the type or manner of services, Mother has waived the right to argue for the first time on appeal that [DCS] failed to offer appropriate reunification services." *Id.* Further, the requirement that DCS provide reunification efforts does "not oblige the State to undertake rehabilitative measures that are futile." *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34. Here, Mother inconsistently participated in services DCS offered and eventually refused to take prescribed medication and participate in mental health services altogether. Mother has shown no error.

## CONCLUSION

¶17 For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to her child.

